IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINA DIFLAVIS, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHOICE HOTELS INTERNATIONAL, | : | |
| INC. *et al.*, | : | NO. 18-3914 |
| *Defendants*. | : | |

# MEMORANDUM

PRATTER, J.                                                                                                                          APRIL 4, 2019

During her brief tenure as a housekeeper at a Clarion Hotel, Gina DiFlavis alleges that she suffered violations of the Fair Labor Standards Act and Pennsylvania Minimum Wage Act. She now seeks relief, on a class action and collective action basis, on behalf of herself and others similarly situated. Choice Hotels International, Inc. moves to dismiss the amended complaint on the grounds that Ms. DiFlavis has not adequately alleged that Choice Hotels was a joint employer in this case. In the alternative, Choice Hotels moves to strike the collective and class action claims from the complaint. For the reasons outlined in this Memorandum, the Court denies the motion in both particulars.

## BACKGROUND

Gina DiFlavis brings this lawsuit as a collective action under the Fair Labor Standards Act,[1] 29 U.S.C. §216(b), and as a class action under the Pennsylvania Minimum Wage Act,[2] 43

---

[1]      Ms. DiFlavis brings this claim on an opt-in basis on behalf of herself and all Clarion Hotel housekeepers who have worked on a full-time, hourly basis during the limitations period (the "FLSA collective").

[2]      Ms. DiFlavis brings this claim on an opt-out, class action basis pursuant to Fed. R. Civ. P. 23 on her own behalf and on behalf all Pennsylvania residents who have worked as full-time, hourly Clarion

1

P.S. §§ 333.101, *et seq.* She alleges that the defendants, as joint employers, had a pattern or practice of failing to pay housekeepers for overtime hours worked at their hotels.

## I. The Parties

Ms. DiFlavis was employed as a full-time hourly housekeeper at the Clarion Hotel & Conference Center in Essington, PA for approximately three months from early-June 2018 until late-August 2018. She alleges that she was only paid for 36 hours of work per week even though she worked, on average, 50 to 55 hours per week. Ms. DiFlavis also contends that she was not paid an overtime rate of $13.50 per hour when she worked in excess of 40 hours per week.

Choice Hotels International, Inc. is a Delaware corporation based in Rockville, MD. The company owns a dozen hotel and motel brands totaling about 6,400 properties worldwide, including roughly 300 Clarion Hotels in 39 states.

Rama Construction Company, Inc. is a Pennsylvania corporation based in Essington, PA. It owns and operates the Clarion Hotel where Ms. DiFlavis worked. Rama is not a party to this motion.

## II. Compensation Allegations

Clarion Hotel housekeepers, such as Ms. DiFlavis, are required to service hotel rooms, including making beds, replacing towels, vacuuming, cleaning, etc. Housekeepers are scheduled to work five 8 ½ hour shifts per week. Each shift includes a 30-minute meal break.

At the start of each day, housekeepers are given a list of 16 or more rooms to service, which supervisors can supplement throughout the day. Housekeepers are paid $9.00 per hour for their first eight work hours plus $5.00 per each room they service beyond 16 rooms. Housekeepers must, however, work until they have serviced all of their assigned rooms per day.

---

Hotel housekeepers and been denied overtime premium wages for overtime hours worked during the maximum limitations period (the "Pennsylvania class").

Ms. DiFlavis alleges that this results in housekeepers working between ten and 12 hours per day and through unpaid meal breaks in order to service all of their assigned rooms. She contends that the defendants do not compensate housekeepers overtime premium wages for the hours they work in excess of 40 hours per week.

According to Ms. DiFlavis, the defendants are aware of these violations because they maintain the Rules and Regulations that result in violations. She argues that the Rules and Regulations calculate housekeeper's pay based on work hours and room totals that supervisors enter into the payroll system, not based on actual recorded time and room service records.

### III. Joint Employment Allegations

Ms. DiFlavis asserts that Choice Hotels and Rama are joint employers. Although Rama owned and operated the Essington hotel where she worked, she alleges that Choice Hotels exercised significant operational control over all Clarion Hotels, including establishing, mandating, and implementing the compensation, hours of work, overtime, scheduling and timekeeping Rules and Regulations at issue in this matter and providing training and guidance on these Rules and Regulations to Clarion Hotel owners, general managers, and staff.

The factors Ms. DiFlavis argues demonstrate Choice Hotels and Rama's status as joint employers include:[3]

- Under the franchise agreement, Choice Hotels subjects every Clarion Hotel to a set of Rules and Regulations. Clarion Hotels are not allowed to disclose this agreement to other parties.

- Choice Hotels requires all Clarion Hotels to maintain certain financial records.

---

[3] Ms. DiFlavis also includes the fact that the former CEO of Choice Hotels, Steve Joyce, was featured on an episode of the television show "Undercover Boss." Mr. Joyce visited several Choice Hotels undercover and then directed a range of improvements after his undercover experiences. Although interesting, the Court declines to consider how probative this fact is for purposes of this motion.

- Choice Hotels maintains a quality assurance program, which includes periodic visits to the hotels to ensure compliance with the Rules and Regulations.

- Choice Hotels licenses an automated property management system to all Clarion Hotels, which the hotels are required to use for operation and management purposes.

- Choice Hotels maintains and requires every Clarion Hotel to use an automated reservation system.

- Choice Hotels provides all Clarion Hotels with consultation services.

- Choice Hotels requires all Clarion Hotels to maintain the hotel in keeping with the Rules and Regulations.

- Clarion Hotels are not allowed to host or sponsor any activity at the hotel that could negatively affect the "Brand Mark, the Choice Marks, our System, the Other Choice Brand Hotels or our business reputation . . . ." Compl. ¶ 18.

- Clarion Hotel owners and general managers are required to attend Choice Hotels training programs.

- Choice Hotels has access to Clarion Hotels at any reasonable time to evaluate compliance with the Rules and Regulations.

- Clarion Hotels are required to accept an agreement that Choice Hotels has oversight over the number of sleeping rooms, meeting rooms, the opening date and term of operation, use of the Clarion Hotel name and logo, pay affiliation and royalty fees, and prepare monthly reports.

- Clarion Hotels must provide Choice Hotels with financial and other data upon request.

- Clarion Hotels must participate in and honor discounts and promotional programs initiated by Choice Hotels.

- Choice Hotels can terminate the relationship; however, Clarion Hotel owners are limited from doing so.

- Choice Hotels also maintains the "Welcome to More" program, by which Choice Hotels manages all reservations made at Clarion Hotels via the Choice Hotels website, runs a customer loyalty program, manages room rates, and advertises Clarion Hotels. The Welcome to More program also provides staff training.

- Choice Hotels provides operations training through its online resource "Choice University." Choice University provides training in various areas, including some required training. There are training sessions that relate to assigning, editing, and tracking housekeeping room assignments, tracking room condition and status, and creating work orders from housekeeping notes.

**DISCUSSION**

Choice Hotels moves to dismiss the complaint pursuant to Rule 12(b)(6) or, in the alternative, to strike the collective and class action allegations pursuant to Rule 12(f). Choice Hotels primarily argues that Ms. DiFlavis has not sufficiently alleged that Choice Hotels is a joint employer. Alternatively, Choice Hotels argues that the class and collective action claims should be stricken or limited to the Clarion Hotel in Essington because that is the only hotel where Choice Hotels and Rama are alleged to be joint employers. The Court denies the motion because Ms. DiFlavis included sufficient joint employer allegations to survive a motion to dismiss and Choice Hotels has not met the high standard required for a motion to strike.

**I. Choice Hotels' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

Choice Hotels moves to dismiss Ms. DiFlavis' complaint on the grounds that she has not adequately alleged that Choice Hotels was her "joint employer" along with Rama. It argues that the joint employer allegations are flawed because Ms. DiFlavis (1) has not satisfied the test for a joint employer under *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462 (3d Cir. 2012) and (2) has not stated whether Rama or Choice Hotels was her primary employer.

*A. Motion to Dismiss Legal Standard*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to

the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

### B. *Joint Employer Allegations Based on the Franchise Agreement*

Choice Hotels argues that Ms. DiFlavis' amended complaint lacks any facts that establish a joint employer relationship between Choice Hotels and Rama. Choice Hotels also argues that the franchise agreement undermines Ms. DiFlavis' "ability to plead in good faith that Defendants are joint employers" because the franchise agreement states that Rama is solely responsible for exercising ordinary business control over the Essington hotel. Choice Hotels Mot. to Dismiss, at 12.[4]

"The basic prerequisite for any FLSA lawsuit is an employment relationship between the plaintiffs and defendant." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 563 (E.D. Pa.

---

[4] Choice Hotels did not include page numbers on their motion to dismiss. Citations are to the ECF generated page numbers.

2011) (citing 29 U.S.C. § 203(e)(1)). Under the FLSA, an employer is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d); *see also Enterprise Rent-A-Car*, 683 F.3d at 467 ("Under this theory, the FLSA defines employer expansively and with striking breadth.") (internal citations and quotations omitted).

One person may be an employee for two or more employers at the same time. 29 C.F.R. § 791.2(a); *see also Enterprise Rent-A-Car*, 683 F.3d at 467. The determination of "joint employer" status requires more. Indeed, a "joint employment relationship can exist when employers are not 'completely associated' with respect to the employment of individuals, or where one employer is controlled by another, or the employers are under common control." *Davis*, 817 F. Supp. 2d at 563 (citing 29 C.F.R. § 791.2(b)). "A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." 29 C.F.R. § 791.2(a); *see also Enterprise Rent-A-Car*, 683 F.3d at 467.

The Court of Appeals for the Third Circuit has concluded "that 'where two or more employers exert significant control over the same employees—[whether] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment—they constitute joint employers' under the FLSA." *Enterprise Rent-A-Car*, 683 F.3d at 468 (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1124 (3d Cir. 1982) (alteration in original). "Significant control" can stem from an indirect relationship. *Id.*

In determining whether an employer-employee relationship exists, courts should consider whether the alleged employer has: "(1) authority to hire and fire employees; (2) authority to

8

promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *Id.* at 469. However, this is not an exhaustive list. *Id.* Courts should consider the "total employment situation" and "economic realities of the work relationship" instead of strictly or narrowly considering the listed factors. *Id.*

Choice Hotels argues that this case is akin to *Garcia v. Nunn*, 2015 WL 5585451, *1 (E.D. Pa. Sept. 23. 2015). In *Garcia*, two janitors sued several defendants for violations of the FLSA, including one grocery store they were to clean pursuant to a contract. The janitors alleged that the defendants were joint employers who all controlled their work. *Id.* at *5. The court concluded that the grocery store was not an employer because the plaintiffs had not adequately pled the *Enterprise* factors for that defendant. *Id.* This conclusion was supported by the plaintiffs' failure to explain why they singled out this grocery store over others that also used their cleaning services. *Id.* The court granted the motion to dismiss as to the grocery store defendant even though it was alleged to have had some control over the plaintiffs because it "did not exercise the significant control over the plaintiffs as required by our circuit's jurisprudence to be considered their employer or joint employer." *Id.* Choice Hotels believes that the amended complaint brought by Ms. DiFlavis in this case is "just as flawed as the complaint in *Garcia*." Choice Hotels Mot. to Dismiss, at 12.

However, Ms. DiFlavis has alleged far more than Choice Hotels acknowledges, and it would be premature to dismiss her claim. The amended complaint states that Choice Hotels exercised significant control over all aspects of the operation of Clarion Hotels, maintained financial data on the business, performed quality assurance visits to evaluate compliance with the

Rules and Regulations, required all Clarion Hotels' owners and managers to attend training, provided the "Choice University" training program, and more.

Although the Franchise Agreement states that Rama is in charge of all personnel issues, Choice Hotels points to no case law to support its assertion that a franchise agreement alone can be used to conclusively demonstrate the lack of a joint employer relationship. The notion that a franchise agreement can be used to protect a franchisor from FLSA litigation at this early point in the case is entirely too self-serving, given how broadly the FLSA defines "employer." *Cf. Kucher v. Domino's Pizza, Inc.*, No. 16-2492, 2017 WL 2987214, *9 (S.D.N.Y. Feb. 13, 2017) (plaintiffs in an FLSA collective action submitted some evidence that a franchisor, Domino's Pizza, was a joint employer with a franchisee and the court determined that the status of Domino's as a joint employer was not dispositive as to whether the court could grant conditional class certification); *Senne v. Kansas City Royals Baseball, Corp.*, 315 F.R.D. 523, 576–77 (N.D. Cal. 2016) (concluding that the plaintiffs, minor league baseball players, would use common evidence to prove that Major League Baseball was their joint employer).

Based on the allegations in the amended complaint, Ms. DiFlavis has alleged enough to persuade the Court that it is plausible that Choice Hotels was her joint employer. The Rules and Regulations are such that it appears Choice Hotels had significant oversight over franchisees, which could have led to the alleged overtime violations in this case. The FLSA's broad definition of employer works in Ms. DiFlavis' favor at this early juncture of the case and helps her complaint to survive the motion to dismiss challenge. *See Schneider v. IT Factor Prods.*, 2013 WL 6476555, at *4 (E.D. Pa. Dec. 10, 2013) (denying motion to dismiss as to individual defendant even though joint employer allegations were "sparse" because the plaintiff had alleged that the defendant was involved in daily operations as a corporate officer of the company);

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014) (vacating the district court's grant of dismissal as to one defendant because the plaintiff had alleged the dismissed defendant conducted training which indicated "at least some authority to 'promulgate work rules and assignments'"). Choice Hotels can raise these arguments again at summary judgment when the record is more fully developed and the extent of the relationship between the parties is clearer. *See Enterprise Rent-A-Car*, 683 F.3d at 468 (affirming district court's grant of *summary judgment* because the plaintiffs had not established joint employer status).

### C. *Primary Employer Allegations*

Choice Hotels also argues that Ms. DiFlavis is required to allege which employer was her "primary employer" and her failure to do so requires dismissal.

In *Davis v. Abington Mem'l Hosp.* the court dismissed the complaint because the plaintiffs named 86 entities and/or individuals as joint employers without establishing to whom the named plaintiffs reported, who established their pay rate, from whom they received their paychecks, and who directly supervised their employment. 817 F. Supp. 2d at 563. These deficiencies failed to put the defendants on notice about "basic information" regarding the claims and the court concluded that the complaint was "thus the antithesis of 'notice' pleading." *Id.* at 565. The plaintiffs were specifically required to include "facts about which of the 86 entities they report [to] each day, the relationship between their employer and the other entities, who directly supervised their employment, and any other information about who, specifically, set their rate of pay and other terms and conditions of employment." *Id.* at 565 n.7.

Although the joint employer allegations in this case currently are sparse and entirely rely on the franchisee-franchisor relationship, Ms. DiFlavis has minimally satisfied these requirements for the notice pleading standard. Unlike *Davis*, this case involves only two

11

employers, Choice Hotels and Rama. The complaint also states that Ms. DiFlavis worked at the Essington Clarion Hotel operated by Rama, thereby clearly delineating who Ms. DiFlavis reported to directly and who supervised her work. Ms. DiFlavis contends that Rama operated the hotel under a franchise agreement with Choice Hotels that gave Choice Hotels extensive control over the terms and conditions of her employment. That control includes that Choice Hotels performed periodic visits to check compliance with its Rules and Regulations, requires Clarion Hotel owners to maintain financial data and provide it upon request, and operates "Choice University," which provides training in areas, including housekeeping.

Choice Hotels has been adequately notified as to the basis for Ms. DiFlavis' claims. Although it may not ultimately bear out that Choice Hotels was Ms. DiFlavis' joint employer, she has pled enough to survive a motion to dismiss.

## II. Striking Class and Collective Action Claims

Choice Hotels also moves to strike the collective and class action allegations or, in the alternative, limit Ms. DiFlavis' claims to similarly-situated workers at the Clarion Hotel in Essington because that is the only location at which she alleges Choice Hotels and Rama are joint employers.[5]

### A. *Motion to Strike Legal Standard*

Under Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber*

---

[5] In its briefing, Choice Hotels also argued that Ms. DiFlavis' complaint is deficient because it refers to "Clarion Hotel" as though it employs housekeepers even though Clarion Hotel is a trademark and/or trade name and, thus, cannot employ anyone. At oral argument, counsel for Choice Hotels withdrew this argument.

*and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Garlanger v. Verbeke,* 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). However, motions to strike "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* Striking a pleading is a "drastic remedy" appropriate only when the grounds for striking are "readily apparent from the face of the pleadings." *Johnson v. Anhorn,* 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (internal citations omitted).

To prevail, the moving party must demonstrate that "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties or [that] the allegations confuse the issues." *River Rd. Dev. Corp. v. Carlson Corp.—Ne.,* No. 89–7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990) (citing 5C C. Wright & A. Miller, Federal Practice and Procedure, § 1382, at 809–10, 815 (1969)). A court may also strike "redundant, immaterial, impertinent, or scandalous" matters on its own. Fed. R. Civ. P. 12(f)(1).

### B. Ms. DiFlavis' Class and Collective Action Claims Survive the Motion to Strike

Choice Hotels contends that Ms. DiFlavis has only alleged that it is a joint employer with Rama at one location, namely the Clarion Hotel in Essington. Ms. DiFlavis believes that the parties may jointly operate other hotels but argues that discovery is required on this issue. Although Ms. DiFlavis acknowledges that the Franchise Agreement between Choice Hotels and Rama only applies to the Essington hotel, she believes that it is likely a form agreement and, thus, may apply to all Clarion Hotels that are licensed under it.

Ms. DiFlavis could have taken the Court up on its offer to amend the complaint and clarify some of her allegations.[6] For example, she seems to allege that the defendants jointly operate all 300 of the Clarion Hotels nationwide. Compl. ¶ 54 ("Based on Defendants' operation

---

6  The Court made this offer at oral argument on this motion.

of about 300 Clarion Hotels . . . ."). Given that this is a franchise agreement, it seems highly unlikely that Rama is the only franchisee of Clarion Hotels.

With that being said, Choice Hotels has not met the high standard to strike Ms. DiFlavis' collective and class action claims. It is premature to strike any class or collective allegations at this early stage of the case, particularly given that the parties have not yet conducted discovery on these issues. *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (citing *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 90 n.30 (3d Cir. 2011)) ("[A] plaintiff may generally conduct discovery relevant to the Rule 23 class certification requirements and a court should, therefore, only grant a motion to strike class allegations if class treatment is evidently inappropriate from the face of the complaint."); *Camesi v. Univ. of Pittsburgh Medical Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (outlining the two-step process courts in this circuit follow in certifying FLSA collective actions, which first requires a plaintiff to make a "'modest factual showing' that the employees identified in the complaint are 'similarly situated'" for conditional certification and then allows the parties to conduct discovery to determine whether each plaintiff who has opted into the collective action is actually similarly situated to the named plaintiff).

This case "is not among the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman*, 640 F.3d at 90 n.30. Based on the facts pled, it is plausible that a class and collective action may be warranted in this case. And discovery will allow the Court to make a fully informed ruling on the propriety of FLSA conditional certification and Rule 23 class certification once the parties file such motions.

**CONCLUSION**

For the reasons set out in this Memorandum, the Court denies Choice Hotel's Motion to Dismiss the amended complaint, including on the alternative, to strike the class allegations. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE