IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GINA DIFLAVIS, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| CHOICE HOTELS INTERNATIONAL, INC. *et al.*, *Defendants* | : : : : | NO. 18-3914 |

## MEMORANDUM

PRATTER, J.                                                                 NOVEMBER 16, 2020

Gina DiFlavis and Rama Construction Co., Inc. jointly request the Court's approval of the proposed Settlement Agreement and Release under the Fair Labor Standards Act. (Doc. No. 92). At the Court's instruction, the parties amended certain provisions of their initial agreement to comply with the FLSA.[1] For the reasons that follow, the Court approves the revised Settlement Agreement and Release and will dismiss the case as between Ms. DiFlavis and Rama.[2]

### BACKGROUND AND PROCEDURAL HISTORY

Ms. DiFlavis alleges that her former employer, Rama, deprived her of overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and the Pennsylvania Minimum Wage Act of 1968 (PMWA), 43 Pa. Stat. §§ 333.101 *et seq.* Ms. DiFlavis worked as a hotel housekeeper at a property owned and operated by Rama. She alleges that Rama neither maintained accurate records of her overtime work nor compensated her for that overtime. Rama

---

[1] The version of the Settlement Agreement that appears on ECF and the version that the Court approves here are identical except with regard to Section II (Waiver and Release) and Section V (Confidentiality). These amended provisions are excerpted in this Memorandum.

[2] Ms. DiFlavis initially filed her complaint against Choice Hotels International, which owns the Clarion hotel brand. Rama owns and operates the specific Clarion location at which Ms. DiFlavis worked. Choice has since been terminated from the action as a defendant but maintains a contribution and indemnification claim against Rama, pursuant to a franchise agreement. Doc. No. 32.

1

denies any liability or wrongdoing and contends it has complied with its obligations under the Acts.

Due to the nature of this particular case, the Court bifurcated the proceedings. The first phase of briefing and discovery addressed FLSA conditional certification and summary judgment on Ms. DiFlavis's individual claims. If her case survived the first phase, the second phase would address class certification for the PMWA class action and any remaining merits discovery. Earlier this year, the Court denied Rama's motion for summary judgment on Ms. DiFlavis's individual claims and denied Ms. DiFlavis's motion for FLSA conditional certification. Doc. No. 72. Thus, the case proceeded to phase two. Rather than proceed with class certification briefing, Ms. DiFlavis and Rama reached a proposed settlement—the approval of which is presently before the Court. Doc. No. 92.

Rama has agreed to pay $40,000, which includes all attorneys' fees and costs, stretched over three installments. The staggered payments—rather than a lump sum—is designed to accommodate Rama's current financial straits, reportedly due in large part to the COVID-19 pandemic and its effects on the hotel industry.

Ms. DiFlavis will receive $10,532.00 of the settlement amount, which is 200% of her best-case recovery. Doc. No. 92-3 (Settlement Agreement and Release) at Section III.C.1. Based on Ms. DiFlavis's testimony used in connection with the summary judgment motion, she worked no more than 15 unpaid overtime hours per week for 13 weeks at an overtime rate of $13.50, which yields a total of $2,632.50. Because Ms. DiFlavis alleged intentional wage denial, she was entitled to liquidated damages, which doubles her best-case recovery to $5,266.00.

The balance of the settlement amount will reimburse all of Plaintiff's counsel's costs (approximately $8,500.00) and cover a portion of the attorney's fees (approximately $21,000.00).

Plaintiff's counsel recorded time charges totaling $160,000 for litigating the case for just over two years.

In exchange for receiving the settlement amount, Ms. DiFlavis agrees to waive and release Rama from any "claims, causes of action, lawsuits, proceedings, or complaints she could have brought based on the facts asserted in her Complaint based on her employment with Rama (the "Released Claims"). Specifically, Ms. DiFlavis expressly releases "any claims arising under the FLSA, PMWA and any Pennsylvania law or regulation that establishes a right to unpaid regular wages or unpaid overtime premium wages . . . ."

The agreement also contains a confidentiality clause:

> Plaintiff and her attorneys represent that they will not communicate or disclose the terms of this Settlement Agreement to any persons other than: (i) an accountant, tax and financial advisor, or attorney, or any of their staff, if necessary for the rendition of professional services to Plaintiff; (ii) a court in any action to enforce the terms of the Settlement Agreement; or (iii) to the extent expressly required by law, by the proper inquiry of a state or federal governmental agency, or by a subpoena to testify issued by a court of competent jurisdiction. Plaintiff may, without violating this provision, disclose to others in substance that the matter has been resolved confidentially. Defendant recognizes that confidentiality provisions in resolution of claims under the FLSA are disfavored and accordingly, if this provision is breached, Defendant will not apply or seek a sanction of any kind nor retaliate against Plaintiff or her attorney.

The Court conferred with the parties to discuss, among other things, the basis for the requested attorneys' fees.

### STANDARD FOR FLSA SETTLEMENT APPROVAL

Parties seeking to settle FLSA claims may either do so under supervision by the Department of Labor or by seeking approval of the district court. 29 U.S.C. §§216(b), (c). The Third Circuit Court of Appeals has not yet addressed directly the standard a district court should use when approving an FLSA settlement. District courts within the Circuit have often looked to the standard adopted by the Eleventh Circuit in *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350 (11th Cir. 1982), when parties seek judicial approval of an FLSA settlement agreement.

*See, e.g., Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *1 (E.D. Pa. Aug. 24, 2015) (collecting cases).

A reviewing court will approve the settlement of FLSA claims if it is "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 652 (E.D. Pa. 2020) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). Provided the court is satisfied that the settlement concerns a "bona fide dispute," the court will then evaluate the terms to ensure that the settlement is (1) "fair and reasonable for the employees" and (2) "furthers the FLSA's implementation in the workplace." *Howard v. Phila. Housing Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016).

## DISCUSSION

### I. The Settlement Resolves a *Bona Fide* Dispute

Before considering whether the terms of the agreement are fair, the Court must first find that the proposed settlement resolves a bona fide dispute. A dispute is *bona fide* if it involves "factual issues rather than legal issues such as the statute's coverage and applicability." *Id.* (internal quotations omitted). The dispute must "fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).

Here, the parties disputed that Rama maintained accurate records of the extra work Ms. DiFlavis performed, that Rama compensated Ms. DiFlavis for the overtime she worked, and that Rama violated the FLSA and the PMWA. Throughout this litigation, Rama denied that Ms. DiFlavis worked in excess of 40 hours per week during any week of her employment. Rama moved for summary judgment on this basis (although it did not prevail at that stage). *See Solkoff,*

435 F. Supp. 3d at 654 (finding bona fide dispute where employer rejected the FLSA claim by denying the number of hours plaintiff claimed to have worked). And Rama continues to deny liability under the FLSA and PMWA. The Court thus finds that there is a *bona fide* dispute.

## II. The Settlement is Fair and Reasonable

### A. Ms. DiFlavis's Recovery

To determine whether an FLSA settlement is fair, district courts within this Circuit have imported the factors from *Girsh v. Jepson* used to evaluate the fairness of a class action settlement. 521 F.2d 153 (3d Cir. 1975). The factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

To be sure, not all of the *Girsch* factors are relevant to a settlement agreement involving a single FLSA plaintiff—as is the case here. The Court considers factors 1, 3-5, and 7-9 in turn, and finds that each weigh in favor of approving the proposed settlement.

> i. *The complexity, expense, and likely duration of the litigation (Factor 1)*

Absent a settlement, the parties would proceed to brief a contested class certification motion, before engaging in pretrial and trial practice. This case has been pending since 2018 and the parties anticipate that, absent settlement, it would extend well in 2021. The expense of additional dispositive briefing, trial, and possible appeal compared to the saving of additional time and resources weigh in favor of approving the agreement.

### ii. The stage of the proceedings and the amount of discovery completed (Factor 3)

This factor requires the court to evaluate whether "counsel adequately appreciated the merits of the case while negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "Post-discovery settlements are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009). Thus far, the parties have completed discovery and briefed summary judgment motions on Ms. DiFlavis's individual claims. In addition, the parties have exchanged discovery relating to COVID-19's impact on Rama's financial operations and its future ability to litigate or to fund a settlement. The discovery produced and reviewed to date has allowed the parties to make sufficiently informed decisions about settlement.

### iii. The risks in establishing liability and damages (Factors 4 and 5)

These factors weigh the potential damages awarded at trial against the benefits of an immediate settlement. Were the parties to proceed to trial, Ms. DiFlavis would need to establish that she was not sufficiently compensated and the actual hours she worked. One way to make such a showing is to establish that Rama failed to keep adequate records of her work. Rama has contended that it has accurately tracked all her hours and disputes that she was not paid for her time worked.

The settlement agreement awards Ms. DiFlavis liquidated damages, which entitles her to double recovery on her overtime wages. To be sure, liquidated damages are the norm in FLSA litigation, *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1979), because establishing a good-faith defense is onerous for the employer. But the settlement agreement obviates the need to make such a showing and automatically awards double damages. Accordingly, the Court finds that this factor favors approval.

    *iv. Defendant's ability to withstand a greater judgment (Factor 7)*

Rama, along with most other hotels, has been significantly affected by the COVID-19 pandemic. Rama reports that it has been operating at roughly 15% capacity during the pandemic and now must divert revenue to complying with various state requirements to minimize viral transmission of the disease. Accordingly, Rama's financial reserves to fund its settlement have plummeted. It now seriously considers filing for bankruptcy. Should Rama file for bankruptcy, Ms. DiFlavis faces a decidedly uncertain ability to collect. This factor favors approval.

    *v. The best possible recovery and attendant risks of litigation (Factors 8 and 9)*

The final *Girsch* factors "test two sides of the same coin." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 746, 763 (E.D. Pa. 2016). Here, the court takes notice of the litigation discount, that is, the risks of proceeding to and not prevailing at trial. If Ms. DiFlavis prevailed at trial, she would be entitled to overtime back wages, liquidated damages (provided Rama could not mount a good-faith defense), and attorneys' fees and costs. 29 U.S.C. § 216(b). Setting aside attorneys' fees, which are discussed below, arithmetically the settlement value represents 400% of wages for 15 hours of overtime per week for 13 weeks (early June to late August) at a rate of $13.50. Ms. DiFlavis was owed $2,633 in back wages. Liquidated damages would entitle her to double recovery, or $5,266. The agreement then doubles that value to $10,532.

The inputs for the back-pay calculation align with the Court's findings at summary judgment and credit Ms. DiFlavis's estimate of her start and end dates. In her declaration, Ms. DiFlavis stated that she worked an average of 10 to 11 hours per day or 50 to 55 hours per week while employed at the hotel. Doc. No. 71 at 23. At summary judgment, the Court inferred that she reasonably could have worked 10 to 15 overtime hours per week. *Id.* at 24. Although Ms. DiFlavis was uncertain of the exact start and end dates of her employment, she estimated that

7

she worked from early June to late August 2018, or roughly 13 weeks. The Court credited her declaratory statements made at her deposition that she worked at the very least from June 13, 2018 to August 3, 2018 (or roughly seven weeks). *Id.* at 25. The settlement agreement thus takes the upper end of the time worked both for overtime hours per week worked and total weeks worked.

It is not clear from the parties' settlement whether the doubling of the liquidated damages is intended to compensate Ms. DiFlavis for any possible recovery she could receive for violations of the PMWA. Like the FLSA, the PMWA provides for liquidated damages. The Second Circuit recently held that an employee in New York could not receive duplicative liquidated damages for violations of both the FLSA and the New York Labor Law. *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 60 (2d Cir. 2018); *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016) ("[D]ouble recovery is generally disfavored where another source of damages already remedies the same injury for the same purpose").

Although the Third Circuit has not expressly addressed on this issue,[3] were Ms. DiFlavis to proceed to trial, there is the possibility that recovery for FLSA violations may bar double recovery under the PMWA for the same injury. For these reasons, the proposed settlement agreement may provide more compensation that Ms. DiFlavis could reasonably expect were she to prevail at trial. The Court thus finds that the settlement amount for Ms. DiFlavis is fair and reasonable from her perspective.

---

[3] At least one district court in this Circuit has held that a plaintiff is not entitled to liquidated damages when asserting claims for unpaid wages under the PMWA and Pennsylvania's Wage Payment and Collection Law because this would be impermissible double recovery. *Friedrich v. U.S. Computer Sys., Inc.*, No. CIV. A. 90-1615, 1995 WL 412385, at *1 (E.D. Pa. July 10, 1995).

**B. Attorney's Fees**

The FLSA requires the Court to articulate the basis for a fee award. 29 U.S.C. § 216(b). The settlement agreement here awards the remainder of the $40,000 as attorneys' fees and costs. Doc. No. 92-3 at Section III.C.2. Plaintiff's counsel will be fully reimbursed for costs (roughly $8,500). The remaining approximately $21,000 will be awarded as attorneys' fees. The FLSA allows for "reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). As compensation for their services, plaintiff's counsel requests that 52.5% of the total settlement be awarded in attorneys' fees.[4] In support of this request, plaintiff's counsel, Mr. Cohen, submitted a declaration, copy of its engagement letter with Ms. DiFlavis, which the Court had requested, and responded to the Court's questions during conference.

Two methods are available to analyze attorneys' fee request in FLSA cases: the lodestar method and the percentage-of-recovery method. *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2014). The percentage-of-recovery is the prevailing method among courts in this Circuit for wage and hour cases, particularly where the parties' agreement creates a pool of money out of which the fees are apportioned. *Keller v. TD Bank*, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014); *McGee*, 2014 WL 2514582, at *4.

Applying the percentage-of-recovery method, the Court considers the following factors:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

---

[4] Because this remains a single plaintiff action, the rule of thumb that attorneys' fees be between 20-45% of the fund is of little use, as these fees were considered for class settlements. *See Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 534 (E.D. Pa. 2016).

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Not all the factors are relevant here because this case was not certified as a class. Accordingly, the Court focuses on factors 1 and 3-6.

Because this is a private single—not a class—action, only Ms. DiFlavis benefits from the settlement. As discussed above, *see* Section II.A *supra*, the Court finds that Ms. DiFlavis will receive a settlement that represents her best-case recovery. So factor one favors approval.

But factors three, four, and six should be considered in the conceptual context of a class action. The case has been pending for over two years months. While that would seem out of the ordinary for a single FLSA plaintiff, the case was bifurcated with the intent of certifying two classes, one for each of the FLSA and PMWA claims. Indeed, counsel's contingency fee agreement with Ms. DiFlavis expressly contemplated filing on behalf of a class. The parties briefed the initial motion to certify an FLSA class, which the Court denied. Doc. No. 71. And, although the efforts ultimately did not bear out, the efforts were not frivolous and the Court acknowledges that plaintiff's counsel expended not unreasonable time and resources on class certification and related discovery.

Mr. Cohen specializes in complex class and collective action cases, with a focus on FLSA and wage and hour litigation. Doc. No. 92-4 (Declaration) at 2. His firm, Stephan Zouras, LLP, likewise specializes in overtime and wage right suits and class actions. *Id.* In the 26 months representing Ms. DiFlavis, counsel internally recorded fees totaling $160,000. This figure represents approximately 300 hours spent in conducting discovery, and briefing class certification on the FLSA claim and summary judgment. The Court does not find this amount to be unreasonable given the efforts to date. *See Mabry v. Hildebrandt*, 2015 WL 5025810 (E.D. Pa.

Aug. 24, 2015) (approving 40% for private settlement where counsel worked 75 hours and served several sets of discovery and drafted one deficiency letter).

Finally, as to factor five, given the structure of the contingency agreement, counsel risked nonpayment if Ms. DiFlavis was unable to establish liability. On an even more practical note, the prospect that Rama may declare bankruptcy introduced the risk that a success for Ms. DiFlavis at trial might be a Pyrrhic victory for her counsel.

Thus, even though the percentage-of-recovery appears high, it is reasonable given the foregoing analysis.

The Third Circuit Court of Appeals has noted the sensibility of "cross-check[ing] the percentage fee award against the lodestar method." *In re Rite Aid Corp.*, 396 F.3d 294, 305 (3d Cir. 2005). The suggested total fee under the lodestar method is the number of hours worked on the case multiplied by a reasonable hourly billing rate for those services rendered. The lodestar crosscheck entails calculating the "lodestar multiplier"—the ratio of the requested fee award under the percentage-of-recovery method to the lodestar. *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). Counsel submits that the fee as calculated under the lodestar method is $160,000. Doc. No. 92-4 at 2. By contrast, the fee requested under the percentage-of-recovery method is approximately $21,000—or, roughly 13% of the lodestar. Because the fee amount is "significantly less" than the lodestar method, the lodestar crosscheck supports the requested fees. *Kraus*, 155 F. Supp. 3d at 534.

Accordingly, the Court approves the award of attorneys' fees and costs.

### III. The Agreement Advances the Purposes of the FLSA

The Court next considers whether Sections II and V of the revised settlement agreement further or frustrate the implementation of the FLSA.

11

The Court finds that the waiver and release in Section II is narrowly tailored. The release is limited to claims arising under the FLSA and PMWA and related Pennsylvania law that could have been brought against Rama based on the facts asserted in the complaint. Ms. DiFlavis is not asked to waive claims based on separate statutory causes of action. *See Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 780 (E.D. Pa. 2016) (rejecting release preventing plaintiff from bringing "any and all claims…concerning the termination of plaintiff's employment"). Courts within this Circuit have routinely approved settlements with similar releases. *See, e.g.*, *Kutz v. Cargill Cocoa & Chocolate, Inc.*, No. 3:19-CV-0176, 2019 WL 5457776, at *8 (M.D. Pa. Oct. 23, 2019) (release limited to claims asserted or could have been asserted "based upon the facts asserted in the Complaint or the Amended Complaint); *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *9 (D.N.J. Aug. 6, 2014) (release limited to claims relating to specific litigation). Because the waiver does not exceed the basis of Ms. DiFlavis's complaint, the Court finds the release is sufficiently limited.

The Court next evaluates the scope of Section V's confidentiality provision. In general, confidentiality clauses in FLSA settlement agreements frustrate the purpose of the Act by restricting information. Employees and the public have an interest in whether a defendant employer has failed to pay fair wages. *Solkoff*, 435 F. Supp. 3d at 658 (citing *Mabry*, 2015 WL 5025810, at *3). This information symmetry benefits the employer, while harming those whose rights may be violated under the FLSA.

But a confidentiality clause may stand if it does not create an information asymmetry between defendant and its employees. *See, e.g.*, *McGee v. Ann's Choice, Inc.*, No. CIV.A. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014) (approving agreement as "reasonable"

where plaintiffs were "free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media").

Here, the Settlement Agreement does not frustrate the FLSA's implementation. First, the Settlement Agreement and all filings but one exhibit are publicly available in this case. *In re Chickie's & Pete's Wage & Hour Litig.*, No. CIV.A. 12-6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014) (approving a proposed settlement that was publicly available). Nor does the confidentiality provision seek to seal the record to stopper the flow of information. *Graudins v. Kop Kilt, LLC*, No. CV 14-2589, 2017 WL 736684, at *9 (E.D. Pa. Feb. 24, 2017).

Second, the limited confidentiality provision is not so "unduly restrictive" as to frustrate the Act's purposes. *In re Chickie's & Pete's*, 2014 WL 911718, at *3. The Settlement Agreement provides that Ms. DiFlavis may disclose to others that the case has been resolved, although she agrees not to disclose the specific monetary terms of the agreement. Should Ms. DiFlavis breach this provision, the confidentiality provision expressly prohibits Rama from seeking sanctions or otherwise retaliating against Ms. DiFlavis or her attorney. Because Ms. DiFlavis will not be at risk of forfeiture, the confidentiality provision does not frustrate the purpose of the FLSA. *See, e.g.*, *Schwartz v. Pa. State Univ.*, No. 4:15-CV-02176, 2017 WL 1386251, at *5 (M.D. Pa. Apr. 18, 2017) (approving similar narrow provision containing no-retaliation clause); *Diclemente v. Adams Outdoor Advert., Inc.*, No. CV 3:15-0596, 2016 WL 3654462, at *4 (M.D. Pa. July 8, 2016) (same).

Accordingly, the Court will approve the revised version of the Settlement Agreement.

## CONCLUSION

For the reasons set out in this memorandum, the Court grants Ms. DiFlavis's and Rama's Joint Motion for Approval of Settlement Agreement and Release and dismisses the case as between Ms. DiFlavis and Rama. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE